## John H. Ellis' Executors

### v.

## Charles E. Throckmorton et al.

A testator, after giving, by will, the residue of his estate to certain people, "subject to the limitation hereinafter expressed," provided that in case of the death of any of the legatees, his share was to be divided among the next of kin of such legatee according to the laws of the state. By the limitation afterwards imposed on E.'s shares of the estate she took only a life interest, with a remainder for life to certain of her children then living, with remainder to one of E.'s grandchildren.—*Held*, that the clause providing for the distribution in case of the death of a legatee did not apply to E.'s share, and she having died before the distribution, her children took only a life estate.

On bill, answer and proofs.

*Mr. Frank P. McDermott*, for the complainant.

*Mr. William T. Hoffman* and *Mr. William Y. Johnson*, for the defendants William S. and Charles E. Throckmorton.

*Mr. Frederick Parker*, for the guardian *ad litem* of infant defendants.

Ellis' Executors *v.* Throckmorton.

Green, V. C.

This bill is filed by the executors of John H. Ellis, late of Freehold, in the county of Monmouth, in this state, deceased, asking for a construction of his will.

His will is dated August 19th, 1891, and after several specific legacies proceeds as follows :

"*Seventh.* All the rest and residue of my estate, real, personal and mixed, I direct my executors to sell, either at public or private sale, at such time or times as to them shall seem best for the interest of my estate, and to divide the proceeds thereof amongst my brothers and sisters, share and share alike, subject to the terms and limitations hereinafter placed upon the shares of C. Holmes Ellis, E. H. Throckmorton and Ellen H. Ellis.

"In case of the decease of any one or more of my said brother and sisters, before such division, then the share of such deceased person shall be paid and distributed to his or her next of kin, according to the laws of the State of New Jersey, in cases of persons dying intestate."

He then directs that the share of the principal sum devised for the benefit of his brother shall be invested, and the net income paid to his said brother semi-annually during his life, and after his decease to be divided amongst his children, share and share alike, with a provision in case of the death of any child before division, its share shall be paid to its next of kin.

Next—

"The share of said principal sum devised for the benefit of my sister, Elizabeth H. Throckmorton, I direct my executors to invest and keep invested in good, safe and reliable securities, to pay the income and interest of the same, after payment of taxes and costs of investment and reinvestment, to my sister, Elizabeth H. Throckmorton, semi-annually, for and during her natural life, and after her decease to divide said share in two equal parts.  One of said half parts I direct my executors to invest and keep invested in some safe and reliable security, and to pay the interest and income thereof, after payment of taxes and expenses, to William S. Throckmorton during his natural life, and at his death to pay said share to the lawful heirs of said William S. Throckmorton.

"The other one-half part of said share I direct my executors to invest and keep invested in some safe and reliable securities, and to pay the interest and income thereof, after payment of taxes and expenses, to Charles E. Throckmorton during his natural life, and at his death to pay said share to the lawful heirs of said William S. Throckmorton."

He directed his executors to invest the share of the principal devised for the benefit of his sister, Ellen H. Ellis, and to pay the income to her for life,

"and after her decease to divide the same amongst my brother and sisters, in the same manner, upon the same terms and with the same limitations as I have above directed my whole residuary estate to be divided."

By a codicil dated November 15th, 1892, he directed his executors to pay to Ellen H. Ellis, her heirs or assigns, the share of the rest and residue of his estate directed to be invested for her benefit, without any limitation or qualification, giving the same to her absolutely.

By the eighth clause of the will, he authorized his executors, if they desire so to do, to select and retain such of his stocks, bonds or other securities, as he might have at the time of his decease, and which would go to make up part of his residuary estate,

"to an amount not to exceed the amount directed to be invested for the benefit of his brother, C. Holmes Ellis, Elizabeth H. Throckmorton and Ellen H. Ellis."

By the ninth clause, he gave his executors power to rent, keep, maintain and care for the property going to make up the said residuary estate, until such time as the same should be sold and disposed of as therein provided, and directed that any rents, receipts or profits that might arise therefrom, after payment of taxes, repairs, insurance and necessary expenses, should be made a part of his residuary estate and go as therein provided.

He originally appointed William S. Combs and Frank P. McDermott executors of his will, but by the codicil revoked the appointment of Mr. Combs and appointed Henry H. Longstreet, in his place.

John H. Ellis died January 10th, 1893, and his will was duly proved January 24th, 1893, before the surrogate of Monmouth county, by the executors, who took upon themselves the burthen of the execution thereof.

John H. Ellis left no wife or issue him surviving. He left one brother, Charles Holmes Ellis, and four sisters, Elizabeth

H. Throckmorton, Ellen H. Ellis, Mary A. Throckmorton and
Emma T. Woodhull.

He left personal estate to an amount, by the inventory, of
$38,449.68 and real estate valued at $9,200.  There were few
debts, and the special legacies aggregated less than $4,000, so
that Mr. McDermott, executor, estimates there will be at least
$40,000 to distribute among the residuary legatees.

Elizabeth H. Throckmorton, the sister of the testator, died
on or about July 13th, 1893, leaving her surviving her two
sons, Charles E. Throckmorton and William S. Throckmorton.
William S. Throckmorton is married, his wife's name being
Susie Ella Throckmorton, and they now have four children,
namely, Aaron Rhea Throckmorton, Willard Porter Throck-
morton, Harold Throckmorton and John Ellis Throckmorton,
all under the age of fourteen years.

Claim having been made by William S. Throckmorton and
Charles E. Throckmorton, on the executors, that they were enti-
tled to so much of the residuary estate as had been bequeathed
to their mother, Elizabeth H. Throckmorton, for life, this suit
is brought for a construction of the will.

The contention of the Messrs. Throckmorton is based on the
clause of the will as follows :

" In case of the decease of any one or more of my said brother and sisters,
before such division, then the share of such deceased person shall be paid and
distributed to his or her next of kin, according to the laws of the State of
New Jersey, in cases of persons dying intestate."

The cardinal rule in the interpretation of wills is that the
intention of the testator, as gathered from the words of the will,
is to govern, and as a corollary that all provisions of the will
are, if possible, to be made effective.  To ascertain the object
of the testator in the clause invoked, we must have recourse not
only to the words of the clause, but to the scheme of the testator
as shown by all of the instrument which may bear upon the
question in dispute.  It is evident that the scheme of the testa-
tor, as ascertained from the original will, was that his residuary
estate was to be divided equally among his sisters and brother,
share and share alike ; that with reference to two of his sisters

and his brother, they were to enjoy only the net income of their shares for their lives, the share of each being limited over in remainder. As to the shares of the other two sisters, they were to be paid to them respectively, absolutely, and to this class, by his codicil, he added his sister Ellen; that he intended the share directed to be invested for the benefit of his brother to go to that brother's children after his decease; and as to the share of Mrs. Throckmorton, he intended that it, in the first place, was to be held by the executors for her benefit during her life, and after her death divided into two equal parts, one part to be held for the benefit of William S. Throckmorton and the net income paid to him for his life, and after his death to go to the children of William S. Throckmorton, the children of William S. Throckmorton being thus the remaindermen of the shares of William S. and Charles E. Throckmorton.

This is the testator's scheme for the disposition of his estate.

Desiring to anticipate the possible contingency that some one of the legatees might die before distribution, he inserted the provision which is now invoked by the claimants. Is it to receive the construction contended for? If so, the conditions and limitations imposed by the testator upon the share of Elizabeth H. Throckmorton are annulled. It is plain that this provision does not in any way defeat the scheme so far as the shares of his sisters, Mary A. Throckmorton and Emma T. Woodhull, under the original will and Ellen H. Ellis under the codicil, are concerned. Neither does its direction ultimately affect the share of the brother, Charles Holmes Ellis, for, under the will, there is but the limitation over to his children. The only question which can arise is as to the effect this clause is to have upon the share of Elizabeth H. Throckmorton. The bequest of the residuary estate is that the executors shall

"divide the proceeds thereof amongst my brother and sisters, share and share alike, subject to the terms and limitations hereinafter placed upon the shares of C. Holmes Ellis, E. H. Throckmorton and Ellen H. Ellis."

Then follows the clause in question, namely,

"that in case of the decease of any one or more of my said brother and sisters, before such division, then the share of such person shall be paid and distributed to his or her next of kin, according to the laws of the State of New Jersey, in cases of person dying intestate."

That he did not intend, by this clause, to revoke the conditions and limitations attached to some shares by the former clause, is shown by the subsequent limitation over, in the original will, of the share of Ellen, wherein he reapplies the same terms and conditions.

There are two classes of beneficiaries, one to take absolutely, the other to take only for life; and in the case of Mrs. Throckmorton, with another estate for life and a further limitation over.

We have seen that the directions of the general clause may be literally applied to the one class and to the brother's share without disturbing the testator's intention as expressed, but in the case of Mrs. Throckmorton's share, such application will absolutely defeat the positive terms and limitations under which the legacy to her is given.

The true construction of the provision, it seems to me, is that the share of any of the devisees or legatees not subject to a limitation inconsistent therewith should, on the death of such legatee or devisee prior to the division, go to his or her next of kin, but as to shares bequeathed on terms and limitations which would be defeated by its provisions, it is to be held inoperative, as contrary to the clearly-expressed intention of the testator. There is authority for the position that when a literal construction of a general clause will, in its application to particular legacies, carry into effect the clear intention of the testator, but will defeat such intention as to other legacies when applied to them, such general clause is to be held to relate to the former and not to the latter class of legacies.

In *Adams* v. *Clark, 9 Mod. 154,* the testator devised several specific legacies to several persons, and, in particular, he devised specific legacies to each of his grandchildren, "to be paid at their respective ages of twenty-one years or days of marriage, which should first happen;" and by a subsequent clause in his

will, he appointed that all the legacies thereby devised shall be paid within one year after his decease. The grandchildren, though under age and unmarried, exhibited their bill and insisted that, by virtue of this last clause in the will, their legacies ought to be paid within a year after the death of the testator. It was held, however, that the subsequent clause in this will, which seemingly contradicts the payment of the legacies to the grandchildren in point of time, must be construed so as it may not be repugnant to any former clause in the same will, and therefore that clause must only relate to the other specific legacies given to the other legatees, and not to the legacies devised to the grandchildren.

*Hawkins on Wills, page 5, proposition 4,* says the intention of the testator, which can be collected with reasonable certainty from the entire will, with the aid of extrinsic evidence of a kind properly admissible, must have effect given to it beyond and even against the literal sense of particular words and expressions. The intention, when legitimately proved, is competent not only to *fix* the sense of *ambiguous* words, but to *control* the sense even of *clear* words, and to *supply* the place of *express* words in cases of difficulty or ambiguity.

Lord St. Leonards, in *Grey* v. *Pearson, 6 H. L. Cas. 61,* says: "Nobody is more disposed than I am to abide by clear words, and to give to them their natural and grammatical meaning, but I never did, and I never can, come to the conclusion that the words of a will cannot admit of modification according to the real intention of the testator, as you find it from other expressions, or from the whole context of the will. It is difficult to lay down any abstract rule upon the subject, but where I find the intention and I find words pointing out the intention, and that if I give to the words their simple meaning, according to grammar and according to their plain *prima facie* import, I defeat the intention, I hold that I am bound by every rule, both of law and equity, to see whether I cannot give to them, by natural construction, an import which will effectuate and not defeat the intention."

Lord Kingsdown, in *Towns* v. *Wentworth, 11 Moo. P. C. C.* (*N. S.*) *526*, says: "When the main purpose and intention of the testator are ascertained to the satisfaction of the court, if particular expressions are found in the will, which are inconsistent with such intention, though not sufficient to control it, or which indicate an intention which the law will not permit to take ·effect, such expressions must be discarded or modified."

I think there can be no doubt as to the intention of the testator, with reference to Mrs. Throckmorton's share; and that he intended that it should ultimately go to the children of William S. Throckmorton; and that his sister, Mrs. Throckmorton, should enjoy the net income thereof during her life; and that his nephews, William S. and Charles E. Throckmorton, should each enjoy the net income of a moiety thereof during their lives respectively.

To give the clause invoked by the Messrs. Throckmorton the construction claimed, the share of Mrs. Throckmorton, by her ·death, would pass absolutely to them. There is an apparent reason for this paragraph, so far as the share of his sisters, to whom they are given absolutely on division, is concerned, viz., in order to avoid any possible question as to who would take in the event of death before division, but no such question was likely to arise with reference to the share of Mrs. Throckmorton, and I therefore think that this will should be construed so as to apply this provision only to the shares which are not limited over. But if we are not justified in disregarding this provision so far as the share of Mrs. Throckmorton is concerned, and if it is consequently true that there is an irreconcilable repugnancy between this provision and the limitations over, annexed to the devise to Mrs. Throckmorton, then it is clear that as these are subsequent provisions they are to be given effect.

*2 Jarm. Wills 44* (*R. & T. ed.* \**472*) : It has become an established rule in the construction of wills, that where two classes or gifts are irreconcilable, so that they cannot possibly stand together, the class or gift which is posterior in local position shall prevail, the subsequent words being considered to denote a subsequent intention.

I am, therefore, of opinion that the executors should be advised that they are not to pay over the one-fifth portion of said estate so bequeathed to the said Elizabeth H. Throckmorton for life, to the said Charles E. Throckmorton and William S. Throckmorton or next of kin, but should invest and retain the principal sum of said one-fifth portion, and pay the income only to the said Charles E. Throckmorton and William S. Throckmorton for their lives, and at their deaths to pay over the said principal sum to the heirs of the said William S. Throckmorton.